IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DAVID F. PETRANO and
MARY KATHERINE DAY-PETRANO
husband and wife,

       Plaintiffs,

v.                                 CASE NO. 1:12-cv-86-SPM-GRJ

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY, et al.,

       Defendants.

_____/

## O R D E R AND REPORT AND RECOMMENDATION

      This matter is before the Court to address no less than thirty motions, the parties have filed in the five weeks since this case was removed to federal court from the Circuit Court for the Eighth Judicial Circuit in and for Alachua County, Florida. This omnibus order addresses all of the motions. Those motions which are not dispositive are resolved in this order. Those motions which are dispositive are resolved in this report and recommendation.

## I.  BACKGROUND

      On January 24, 2012 Plaintiff, proceeding *pro* se,[1] filed a 139 page complaint in the Circuit Court for the Eighth Judicial Circuit in and for Alachua County, Florida. Plaintiffs purport to allege claims in this case against thirteen (13) defendants, relating

---

[1] David Petrano has been a member of the Florida Bar in good standing since February 2003. Although Mr. Petrano is not currently a member of the Bar of the Northern District of Florida, Mr. Petrano is representing himself in this case.  Mary Katherine Day-Petrano is a member of the Bar of the State of California but has not requested permission to appear in this case *pro hac vice* and instead is representing herself. Thus, while both Plaintiffs are attorneys they are deemed to be proceeding *pro se.*

to a number of unconnected and distinct events including an automobile accident, the

Plaintiffs' purchase of a horse farm, a real property dispute with CSX railroad and

others over an easement and two claims for smoke damage submitted to their

homeowner's insurance company. There is also an unrelated claim against the Florida

Bar contending that the Bar "allows, encourages, and facilitates its members to violate

the ADA."  As an example of the complete disconnect between the multiple claims in

this case, Count one of the complaint contains a claim against Plaintiffs automobile

insurer and the lawyers who represented the insurer regarding a claim for

uninsured/underinsured motorist coverage for an automobile accident that occurred in

January 2008. In contrast, in count six of the complaint Plaintiffs have sued their title

insurance company for an alleged defect in title because an easement was not

obtained providing the Plaintiffs access to a horse farm the Plaintiffs had purchased.

Lastly, in Count twelve of the complaint Plaintiffs have sued their property insurance

carrier relating to a claims for smoke damage that occurred to their property as a result

of a wildfire. Simply put, the claims brought by Plaintiffs do not appear to have any

common nucleus of operative facts and relate to completely unconnected events and

occurrences.

The Plaintiffs have attempted to join these disparate and unconnected claims in

the same case because the Plaintiffs allege they were the victims of discrimination

because of their disability. Mary Day-Petrano alleges that she has an autism spectrum

disability and that in some way each of the named defendants discriminated against her

or retaliated against her because of her disability. David Petrano also alleges he is

disabled and was a victim of discrimination. The claim that the Plaintiffs are disabled

and were allegedly the victims of discrimination appears to be the only reason all of these unrelated claims were brought in the same lawsuit.

The case ended up in federal court when one of the defendants, Old Republic National Title Insurance Company removed the case to federal court pursuant to 28 U.S.C. 1441(c).[2] Section 1441(c)(1)(B) authorizes the removal to federal court of an entire civil action in which federal claims are joined with state law claims.  Old Republic removed the case on the basis that the Plaintiffs have brought a claim against them for violation of federal law, presumably under Title II of the ADA.

The thirteen named Defendants and a brief description of their alleged involvement in this case are as follows: (1) Nationwide Mutual Fire Insurance Company ("Nationwide"). Nationwide issued a Florida automobile policy to Plaintiffs, which covered Plaintiff for accidents involving underinsured/uninsured motorists. Plaintiffs allege that Nationwide refused to pay the Plaintiffs under the policy for an accident, and during the claims handling and legal process, discriminated and retaliated against the Plaintiffs by virtue of their disability. (2) Earl Charles Law ("Law") is the claims representative who handled the claim on behalf of Nationwide. Plaintiffs allege that Law discriminated against them in adjusting their claim because of their disability. (3) Carl Schwait is a Florida licensed attorney, who apparently represented Nationwide in its coverage litigation with the Plaintiffs. Plaintiffs allege that Mr. Schwait discriminated against them during the course of the litigation by "badgering and bullying" the

---

[2] Old Republic's Notice of Removal is entitled "Notice of Removal of Action Under 28 USC § 1441." However in the body of the Notice of Removal Old Republic references "28 U.S.C. 1414(c)." The Court assumes this is a typographical error.

Plaintiffs.[3]  (4) Old Republic National Title Insurance Company ("Old Republic".) Old Republic allegedly delayed or failed to pay Plaintiffs under a title insurance policy relating to the Alachua County horse farm the Plaintiffs purchased.  Although it is far from clear Plaintiffs allege that Old Republic violated Title II of the ADA because the policy and other legal documents did not comply with certain alternative formats, minimum fonts and did not contain short simple sentences for sight and cognitive disabilities. (5) Attorney's Title Fund Services, LLC ("Attorneys Title Fund"). Attorney Title Fund is the entity that issued the title policy on the Plaintiffs' real property and is sued for essentially the same claims as Old Republic. (6) Darlene Baylor. ("Baylor"). Ms. Baylor is the seller of the Alachua County real property, who Plaintiffs allege failed to record an easement for access to the property as promised. Plaintiff has sued Ms. Baylor for breach of warranty, fraud in the inducement and for violation of a Florida statute relating to abuse of disabled adults. (7) Michael Chiumento ("Chiumento"). Mr. Chiemento, an attorney, represented Ms. Baylor in the sale of the real property to the Plaintiffs and also served as the closing agent for Attorney's Title Fund. Mr. Chiumento is sued for fraud in the inducement, for deceit and for violation of Florida law relating to abuse of disabled adults. (8) CSX Transportation, Inc. ("CSX"). CSX is a company operating a railroad and is named as a defendant in a claim for declaratory relief because the easement Plaintiffs contend should have been recorded when they purchased their property involves land over a CSX railroad crossing.  (9) Alachua

---

[3] Further, without any factual basis Plaintiffs also suggest that Mr. Schwait, as a member of the Florida Bar Board of Governors and as a member of the Eighth Judicial Circuit Nominating Commission manipulated the selection of judges to ensure that applicants with disabilities were screened out to insure that his client Nationwide would receive favorable treatment. The Court mentions this allegation to underscore the frivolous nature of many of the allegations included in the Complaint.

County. Alachua County is joined as a party in Plaintiffs' claim for an injunction preventing Alachua County from interfering with the easement Plaintiffs contend that are entitled. (10) John Fernando ("Fernando"). Although it is difficult to discern the role of Fernando, he appears to be an adjoining property owner who requested the Plaintiffs pay a fee for the right to use an easement to access Plaintiffs' property. (11) Citizen's Property Insurance Corporation ("Citizens"). Citizens is a state of Florida governmental insurance company which provides residential and commercial insurance for property owners who are unable to procure insurance through private insurance markets. Plaintiffs have sued Citizens for a violation of Title II of the ADA as a result of Citizens' alleged failure to pay Plaintiffs for two smoke damage claims to their residence, negligence in handling the claims and for violation of Florida law relating to abuse or exploitation of disabled adults. (12) Florida Department of Financial Services ("FDFS"). FDFS is sued for violation of Title II of the ADA. (13) The Florida Bar ("Fla. Bar"). The Fla. Bar is sued for violating Title II of the ADA because it "allows, encourages, and facilitates its members to violate the ADA."

A review of the length (139 page complaint) and breath of Plaintiffs' claims demonstrates that there is very little that ties these claims together other than Plaintiffs' confusing and rambling allegations that the named Defendants violated the ADA and/or committed unrelated wrongs that allegedly caused the Plaintiffs a variety of damages. In essence the Plaintiffs have utilized this lawsuit to collect together in one place at least four separate, unrelated lawsuits, all under the guise of the ADA. These separate events and occurrences consist of: (1) Plaintiffs' claims for damages and injunctive relief relating to the handling of their claim for coverage and payment under their

automobile policy; (2) Plaintiffs' claims relating to the purchase of their horse farm and the alleged failure to obtain an easement on the property; (3) Plaintiffs' claims for damages and injunctive relief under their property insurance policy for smoke damage to their property; and (4) Plaintiff's ADA claims against the Florida Bar.  As discussed below –  at a minimum - Plaintiffs cannot be permitted to proceed in one lawsuit with these disparate and unrelated claims joined in one case. Permitting the Plaintiff to proceed in this fashion would be inimical to the just, speedy and inexpensive determination of every action and proceeding, as required by Rule 1 of the Federal Rules of Civil Procedure and would constitute misjoinder of parties pursuant to Rule 21 of the Federal Rules of Civil Procedure.

## **Pending Motions**

There is no better evidence that the complaint improperly combines unrelated claims in one lawsuit and improperly attempts to conflate multiple claims within the same count of the Complaint, than the rash of motions filed in this case in the short time the case has been pending here since removal. The following motions have been filed and are fully briefed or are in such a posture that the motion is ripe for review:

1.   Defendant Old Republic National Title Insurance Company's Amended Motion to Dismiss With Incorporated Memorandum of Law. (Doc. 6.)

2.   Defendant Citizens' Amended Motion To Dismiss Plaintiffs' Complaint, As To Citizens, For Improper Venue, And Incorporated Memorandum of Law In Support Thereof. (Doc. 8.)

3.   Defendant Citizens Property Insurance Corporation's Motion To Dismiss And Incorporated Memorandum of Law. (Doc. 9.)

4.   Motion To Dismiss Count Eighteen of the Complaint For Failure to State a Claim Upon Which Relief May Be Granted. (Doc. 11.)

5.      Plaintiffs Motion To Exceed 25 Page Limit Response To Defendant Old Republic's Motion To Dismiss, And Counter-Motion For Summary Judgment. (Doc. 12.)

6.      Plaintiffs Response to Defendant Old Republic's Motion To Dismiss, And Counter-Motion For Summary Judgment On The Issue of Liability of the Title Insurer. (Doc. 13.)

7.      Defendant Carl Schwait's Motion to Dismiss Counts 1, 3 and 4 With Incorporated Memorandum of Law. (Doc. 15.)

8.      Defendant Nationwide Mutual Fire Insurance Company's Motion to Dismiss With Incorporated Memorandum of Law. (Doc. 17.)

9.      Plaintiffs' Response to Defendant Citizen's Property Insurance Corporation's Motion To Dismiss and Counter-Motion For Partial Summary Judgment on the Issue of Liability. (Doc. 21.)

10.     Defendant Earl Charles Law's Motion to Dismiss With Incorporated Memorandum of Law. (Doc. 19.)

11.     Plaintiffs Motion to Strike And/Or Response to "Defendant Nationwide Mutual Fire Insurance Company's Motion to Dismiss Or, In The Alternative, For More Definite Statement" Filed In The State Court After Removal of This Action With Counter-Motion For Partial Summary Judgment on the Issue of Liability. (Doc. 22.)

12.     Plaintiffs Motion Requesting This Court Take Judicial Notice of Defendant Nationwide Mutual Fire Insurance Company's Motion To Dismiss Filed In the State Court After Removal of this Action. (Doc. 24.)

13.     Plaintiffs Motion Requesting This Court Take Judicial Notice of Plaintiff Day-Petrano's Prior "Final" Res Judicata Titles II, III Americans With Disabilities Act, Sec. 504, and Federal Court Disability Accommodations Determinations. (Doc. 25.)

14.     Plaintiffs Motion Requesting This Court Take Judicial Notice of Return of Summons on Defendant CSX Transportation, Inc. In This Action. (Doc. 27.)

15.     Plaintiffs Motion Requesting This Court Take Judicial Notice of Summons on Defendant Alachua County In This Action. (Doc. 28.)

16.     Plaintiffs Motion Requesting This Court Take Judicial Notice of the Official Meaning of "Olmstead" Community-Based Living, and Research Studies Pertaining to Plaintiff's Autism and Co-Existing Disabilities Respecting All Pleadings Filed In This Case. (Doc. 30.)

17.     Defendant Old Republic National Title Insurance Company's Motion To Strike Or In The Alternative, Response In Opposition To Plaintiff's Counter-Motion For Summary Judgment. (Doc. 31.)

18.     Defendant CSX Transportation, Inc.'s Motion To Dismiss Complaint And Incorporated Memorandum of Law. (Doc. 32.)

19.     Plaintiffs' Motion To Exceed Page Limit To 36 Pages In Total To File Plaintiffs' Response To Defendant Carl Schwait's Motion To Dismiss Counts 1, 3 and 4 Et Al, And Counter-Motion For Partial Summary Judgment On The Issue of Liability Against Defendant Carl Schwait. (Doc. 33.)

20.     Plaintiff's Motion To Exceed Page Limit To File Plaintiffs Response to Motion To Dismiss And Counter-Motion For Partial Summary Judgment On The Issue of Liability. (Doc. 35.)

21.     Citizens' Motion To Remand And Incorporated Memorandum of Law. (Doc. 37.)

22.     Plaintiffs Motion Requesting This Court Take Judicial Notice of Plaintiffs' Signature Supplied for Plaintiffs' Motion Requesting this Court Take Judicial Notice of Plaintiff Day-Petrano's Prior "Final" Res Judicata Titles II, III Americans With Disabilities Act, Sec. 504, and Federal Court Disability Accommodations Determinations. (Doc. 39.)

23.     Plaintiffs Motion For Entry of Order Authorizing Plaintiffs to File Pleadings Via CM/ECF and Directing PACER Center to Re-Open Her Account Without Surcharge, Authorizing Plaintiff Mary Katherine Day-Petrano To Bring Her Autism Computer Into Federal Courthouse For Any Hearings In This Action So She Can Communicate, And For Extension of 120 Day Time Period To Serve All Remaining Defendants With Publication Service On Darlene Baylor and John Fernando. (Doc. 40.)

24.     Plaintiffs Motion For Entry of Order For United States Administrative Office of the Courts, Or Otherwise, Timely Provide a Specific Autism Functional Blind Vision Impairment Deafness Language Interpreter/Transcriber. (Doc. 41.)

25. Plaintiffs' Motion To Exceed Page Limit To File 33 Page Response to Defendant Nationwide Mutual Fire Insurance Company's Motion To Dismiss And Counter-Motion For Partial Summary Judgment On The Issue of Liability Against Defendant Nationwide. (Doc. 42.)

26. Defendant Alachua County Board of County Commissioners' Motion For A More Definite Statement Or In The Alternative To Dismiss the Complaint. (Doc. 44.)[4]

27. Plaintiff's Motion To Exceed Page Limit. (Doc. 46.)

28. Defendant Citizens' Property Insurance Corporation's Motion To Strike, Or In The Alternative, Response in Opposition to Plaintiffs' Counter-Motion For Summary Judgment. (Doc. 48.)

29. Motion To Consolidate Related Cases Funding Plaintiffs' Autism *Olmstead* Community-Based Living Rights To Avoid Irreparable Prejudice of Inconsistent Determinations. (Doc. 49.)

30. Nationwide Mutual Fire Insurance Company's Amended Motion To Strike. (Doc. 54.)

31. Carl Schwait's Motion To Strike Or, In The Alternative, Response In Opposition to Plaintiffs' Counter-Motion For Summary Judgment. (Doc. 55.)

## DISCUSSION

### A. *Plaintiffs' Complaint Is Not A Short and Plain Statement And Is Due To Be Dismissed With Leave to Amend*

The Complaint in this case includes seventeen counts,[5] pled in 413 numbered paragraphs, spanning more than 139 pages, excluding attachments. The Complaint

---

[4] Defendant, Alachua County Board of County Commissioners have also filed an amended memorandum of law supporting its motion for more definite statement or in the alternative to dismiss. (Doc. 63.)

[5] The Complaint incorrectly includes a count eighteen even though there are only seventeen counts.

names thirteen separate defendants and while each count of the complaint purports to identify the nature of the claim, the allegations contained within each count are rambling and in many counts have little to do with the nature of the claim identified in the heading of the particular count. Most notably, however, is the fact that this lawsuit attempts to include in one complaint at least four or five separate claims, each having nothing to do with the other. The only connection between the claims in the lawsuit is that the Plaintiffs allege they were victims of discrimination. It is wholly improper to include in the same lawsuit claims against multiple defendants which do not have any connection with each other.

 While the Court could attempt to dissect the arguments in each motion to dismiss, it is not necessary to do so because the bottom line is that the Complaint constitutes a classic example of a shotgun pleading, which the Eleventh Circuit has "condemned repeatedly."   *Muglata v Samples*, 256 F.3d 1284 (11th Cir. 2001).  The complaint is replete with irrelevant and unsupported factual allegations and legal conclusions, and is plagued by incomprehensible and truly puzzling statements. As a result the Court is forced to sift through various irrelevancies and myriad word puzzles to distill what it is exactly that Plaintiffs intend to place before the Court for resolution – an onerous task which the Court is unable and unwilling to perform in this instance or any other instance. Where, as here, the Court is confronted with a shotgun pleading the Court has an obligation and duty to insure that the Complaint which goes forward properly frames the issues. Unless the Court requires on its own that a party replead a shotgun pleading it will lead to a shotgun answer (or as in this case shotgun motions to

dismiss). Such disjointed pleadings also will make it difficult or impossible to set the boundaries for discovery. *Byrne v. Nezhat*, 261 F.3d 1075, 1129 (11th Cir. 2001)("Shotgun pleadings ... impede[...] the due administration of justice and, in very real sense, amount [...] to obstruction of justice.")(*internal citations omitted).*  These aggregate negative effects of shotgun pleadings on trial courts have been noted with great concern by the Eleventh Circuit. *See, e.g. Byrne*, 261 F.3d at 1131 ("Shotgun pleadings, if tolerated, harm the court by impeding its ability to administer justice. The time a court spends managing litigation framed by shotgun pleadings should be devoted to other cases waiting to be heard."); *Cramer v Florida*, 117 F.3d 1258, 1263 (11th Cir. 1997)(noting that "[s]hotgun pleadings ... exact an intolerable toll on the trial court's docket."); *Ebrahimi v. City of Huntsville Bd. Of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997)(*per curiam*)("[S]hotgun pleadings ... impede the orderly, efficient and economic disposition of disputes."); *Anderson v Dist. Bd. Of Trustees of Cen. Fl. Comm. College*, 77 F.3d 364, 367 (11th Cir. 1996)(noting the "cumbersome task of sifting through myriad claims, many of which may be foreclosed by various defenses" that judges face in connection with shotgun pleading.).

While there are numerous fundamental problems with each count of the Complaint, which the Court will briefly discuss below, at a minimum before a determination is made on the merits of whether any particular claim states a viable cause of action, Plaintiffs will be required to file an amended complaint in compliance with Rule 8 of the Federal Rules of Civil Procedure and limited to one – and only one – occurrence, which raises a federal claim. Throughout Plaintiffs' complaint, Plaintiffs

mention various violations of the ADA but improperly include the claims within a count alleging conduct that amounts to nothing more than a state law claim. For example, Plaintiffs sue Nationwide because Nationwide has allegedly failed to pay Plaintiff since January 2009 on her claim for underinsured motorist coverage. Plaintiffs further allege they have served a bad faith notice to the insurance company. The claim therefore is really a claim for breach of contract, bad faith or declaratory relief, claims that do not involve any federal question. Plaintiffs, however, attempt to include allegations against Nationwide for violation of the ADA, without alleging a factual or legal basis for the ADA claim. The Court is left to guess as to the nature of the claim. Not surprisingly the disjointed and rambling nature of the complaint triggered a series of motions to dismiss by the Defendants. The common theme of the motions to dismiss is the inability of the defendants to sort out and make sense of the allegations.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain a short and plain statement of the claim showing that Plaintiffs are entitled to relief. The purpose of the short and plain statement requirement is to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. V Twombly*, 550 U.S. 544, 570 (2007). That is not possible for any defendant in this case to do based upon this Complaint.

In addition to the requirement that the complaint include a short and plain statement of the claim, this action is pending in federal court upon removal from state court. Pursuant to 28 U.S.C. § 1441(c)(2) - which was revised effective December 2011 -- a defendant in a state court action may remove an entire case to federal court where,

as here, a civil action includes a claim based on federal law and a claim (or claims) not within the original jurisdiction of the court are included in the complaint. That is what Old Republic did in this case. Old Republic removed the claim against it – which vaguely asserted a claim under the ADA – even though there are numerous other claims in this case which involve state law claims against non-diverse parties. The revised statute now provides that upon removal of such an action "[t]he district court shall sever from the action all claims [which were not removable by themselves] and shall remand the severed claims to State court from which the action was removed." 28 U.S.C. § 1441(c)(2). The Court would have done just that if it was possible to make sense of the claims so that they could be separated by party or count as to which claims should be severed and remanded. However, because Plaintiffs improperly intermingled the allegations of multiple defendants in many of the counts and conflated state law claims with unrelated allegations of ADA violations it is impossible to determine which counts should be severed and remanded. To the extent that Plaintiffs attempt to include state law claims in an amended complaint these claims will be severed and remanded to state court.

In amending the Complaint to the extent that Plaintiffs seek to bring a claim for violation of the ADA, Plaintiffs should distinguish between claims brought under Title II – which proscribes discrimination against the disabled regarding access to public services, 42 U.S.C. § 12132 ("No qualified individual with a disability shall ... be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.") – and

Title III, which proscribes discrimination against the disabled in public accommodations. 42 U.S.C. § 12182(a)("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of public accommodation.").  Plaintiffs should limit the allegations in a count to the facts Plaintiffs contend support a claim for violation of the ADA. The inclusion of unnecessary allegations concerning the basis of their state law claims is wholly unnecessary and improper.

In addition to the requirement that the Complaint include only a short and plain statement of the claim  Plaintiff should insure that the party named as a defendant is subject to liability under the particular provision of the ADA. For example, with regard to any party that is a state created governmental entity Plaintiff should keep in mind that Eleventh Amendment immunity may protect such an entity from a claim for damages under the ADA. Further, to the extent that Plaintiff names an individual defendant in the amended complaint for a violation of the ADA Plaintiffs should make sure that the particular title of the ADA relied upon by Plaintiff authorizes claims against individuals.[6] While this list is not exhaustive, Plaintiffs are encouraged to give appropriate thought

---

[6] For example, under the general anti-discrimination provision of Title II of the ADA disabled individuals may seek redress for discrimination by a public entity, but not against individuals. *See, Schotz v. City of Plantation*, 344 F.3d 1161, 1172 n. 17 (11th Cir. 2003). Under Title III of the ADA an individual may only be liable if he or she "owns, operates, or leases the public accommodation." *Coddington v. Adelphi Univ.*, 45 F.Supp. 2d 211, 215 (E.D. N.Y. 1999). An individual, however, may be held liable under the anti-retaliation provision of the ADA. 42. U.S.C. § 1203(a). *See, Schotz* at 1180.  The anti-retaliation provision of the ADA prohibits retaliation and not discrimination based upon a disability. To the extent the Plaintiffs attempt to allege a claim for retaliation Plaintiffs must be able to allege facts demonstrating a retaliatory animus which is the result of Plaintiffs' complaint of discrimination based upon disability.

and are required to conduct the necessary legal research before bringing a claim. Although the Plaintiffs are currently proceeding *pro se* the Plaintiffs are attorneys and therefore are expected to adhere to the ethical standards applicable to attorneys. Any attempt to bring a claim that is unsupported by a viable legal theory or any attempt to bring a claim against a party, who cannot be held liable under the ADA, could be subject to a motion for sanctions under 28 U.S.C. § 1927.[7]

In addition to the problems with the complaint discussed above, which require dismissal of the complaint with leave to amend, the following specific problems are evident in the complaint:

- To the extent Plaintiffs are attempting to bring a claim against Old Republic, Attorney's Title Fund Services, LLC or Nationwide under Title II, Plaintiffs have failed to allege that Old Republic or Nationwide constitute a "public entity" for purposes of Title II.

- To the extent that Plaintiffs are attempting to bring a claim against any defendants for violation of Fla. Stat. § 415.1111, alleging that they qualify as "vulnerable adults," Plaintiffs have failed to allege any facts meeting the definition of "abused, neglected, or exploited" and fail to allege any facts suggesting that any of the Defendants fall within the category of individuals who may be subject to suit i.e a relative, caregiver, or

---

[7] 28 U.S.C. §1927 provides, in pertinent part, that, any attorney or other person admitted to conduct cases in any court of the United States who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs , expenses, and attorney's fees reasonably incurred because of such conduct."

household member" or an alleged "perpetrator."

● To the extent that Plaintiffs have named Alachua County as a defendant there are simply no allegations that the County Commission had anything to do with the easement. To the extent that the Plaintiffs are attempting to sue the Sheriff regarding some action taken with regard to the easement, the Sheriff in her official capacity would be the appropriate party to name.

Consequently, for the reasons discussed above the Court concludes that the Plaintiffs' complaint is due to be dismissed without prejudice because it is a classic example of a shotgun pleading. Further, because the Plaintiffs are proceeding *pro se* – and recognizing that the Plaintiffs may suffer from a disability – the Plaintiffs shall have the right to file an amended complaint to properly frame the claims in this case and to narrow their claims to one and only one nucleus of operative facts.

Accordingly, because the Complaint is due to dismissed and Plaintiffs have been granted leave to file an amended complaint, the various motions to dismiss filed by the Defendants (Docs. 6, 8, 9, 11, 15, 17, 19, 32 and 44), attacking the sufficiency of the complaint, are due to be denied without prejudice.[8] To the extent necessary Defendants may raise any arguments previously raised in responding to the amended complaint.

**B. The Various Motions to Strike**

Because the Court is dismissing the complaint with leave to amend, the motion

---

[8] The Court will defer ruling on Defendant Citizens' Motion To Remand (Doc. 37) pending the filing of an amended complaint to determine whether Plaintiffs proceed against Citizens in their amended complaint. To the extent that Plaintiffs include Citizens in the amended complaint the Court will then address citizens' motion to remand.

to strike filed by Plaintiffs requesting that the Court strike Defendant Nationwide's Motion to Dismiss, is moot and, accordingly, Plaintiffs' Motion to Strike (Docs. 22) is due to be denied as moot.

Defendants have filed a series of motions to strike (Docs. 31, 48, 54, and 55) requesting that the Court strike the counter-motions for summary judgment, Plaintiffs filed as a response to the motions to dismiss. Because the Court has dismissed the complaint subject to the right of Plaintiffs to file an amended complaint, the motions to strike are due to be granted. Accordingly, Plaintiffs' Responses to the Motions to Dismiss, which improperly included a counter-motion for summary judgment (Docs. 13, 21), are due to stricken.

### C.  Miscellaneous Motions

Plaintiffs have filed a series of motions requesting leave to file excess pages in their responses to the various motions to dismiss. (Docs. 12, 33, 35, 42, and 46.) Because Plaintiffs' complaint is dismissed with leave to amend there is no need to file responses let alone responses that exceed the 25 page limit. Accordingly, Plaintiffs' motions for leave to file excess pages (Docs. 12, 33, 35, 42 and 46) are due to be denied.

In addition Plaintiffs have filed a series of motions requesting that the Court take judicial notice of various events and other facts. For the most part these motions were wholly unnecessary. However, because the Complaint is due to be dismissed these motions (Docs. 24, 25, 27, 28, 30 and 39) are also due to be denied.

Plaintiff, Day-Petrano also has filed a Motion to Consolidate (Doc. 49) this case

with another case filed in this district in which Plaintiff is seeking review of a decision of the Social Security Administration. (*See, Day-Petrano v. Astrue, case no. 1:12cv97-MP/CAS*). In that case Judge Stampelos entered an order directing Plaintiff to amend her complaint to limit it to one type of case. Plaintiff has challenged the order and has not yet filed an amended complaint. Accordingly, there is nothing to consolidate at this point. Neither case has an operative complaint and thus there is no reason at this juncture to consolidate the two cases. Accordingly, Plaintiff's motion to consolidate is due to be denied.

Plaintiffs have filed a motion entitled "Motion For Entry of Order Authorizing Plaintiffs to File Pleadings Via CM/ECF And Directing Pacer Center To Re-Open Her Account Without Surcharge, Authorizing Plaintiff Mary Katherine Day-Petrano To Bring Her Autism Computer Into The Federal Courthouse For Any Hearings In This Action So She Can Communicate, And For Extension of 120 Day Time Period To Serve All Remaining Defendants With Publication Service On Darlene Baylor and John Fernando." (Doc. 40.) Plaintiffs request three distinct types of relief. First, Plaintiffs' request permission to utilize CM/ECF. Secondly, Plaintiffs request permission to bring an autism computer into the courthouse for any hearings. Lastly, Plaintiffs request an extension of the 120 time period to serve any unserved defendants and request permission to serve two individual defendants by publication.

First, with regard to the request to utilize CM/ECF, N.D. Fla. Loc. R. 5.1(A)(1) provides in pertinent part that "[a]ll documents in civil and criminal cases shall be filed by electronic means, except that documents in cases filed pro se (prisoner and non-

prisoner) . . . shall continue to be filed in paper form" and that "[a] judicial officer may

grant other exceptions for good cause."  In this case, it appears Plaintiff David Petrano

is a member of the Florida Bar and a licensed attorney in Florida.  To the extent Mr.

Petrano would like to use CM/ECF to file documents in this case electronically, he may

complete the process for admission to the bar of this district specified in N.D. Fla. Loc.

R. 11.1(A) and (B). Accordingly, good cause has not been demonstrated to grant

Plaintiffs an exception to N.D. Fla. Loc. R. 5.1(A)(1)'s requirement that pro se parties

file documents in paper form.

With regard to Plaintiffs' request to bring into the courthouse for any hearings her

autism computer, although no hearings are currently set, the request is due to be

granted. Plaintiff Mary Katherine Day-Petrano shall be authorized to bring into the

United States Courthouse in Gainesville, Florida her autism computer in the event the

Court schedules any hearings in this case.

With regard to Plaintiffs' request for extension of the 120 day time limit the

request is due be granted for a period of sixty days to the extent that there are any

unserved defendants who are named in the amended complaint. To the extent that

Plaintiffs are requesting that the Court authorize service by publication on Darlene

Baylor and John Fernando the request is due to be denied. Until the amended

complaint is filed it is uncertain whether Plaintiffs will be able to proceed in federal court

with claims against these individuals. Additionally, there has been no showing of a

factual or legal basis authorizing service by publication.

Accordingly, Plaintiffs' Motion (Doc. 40) is due to be granted in part and denied in

part.

Lastly, Plaintiffs have filed a Motion For Entry of Order For United States Administrative Office of the Courts, Or Otherwise, Timely Provide A Specific Autism Functional Blind Vision Impairment Deafness Language Interpreter/Transcriber. (Doc. 41.)  This motion requests that the Administrative Office of the United States Courts provide Plaintiffs with some type of interpreter for court proceedings. This motion is due to be denied as premature for two reasons. The request properly should be addressed to the Administrative Office of the United States Courts. Secondly, there are no hearings scheduled in this case and unless and until a hearing is scheduled there is not need for an interpreter. The motion is, therefore, due to be denied without prejudice.

<u>Conclusion</u>

Accordingly, for the reasons explained above, it is **ORDERED**:

1.  Plaintiffs' Complaint is due to be **DISMISSED without prejudice**. Plaintiffs are given leave to file an amended complaint. The amended complaint should be prepared consistent with the directives in this order and must be filed by **July 13, 2012**, failing which the complaint will be dismissed with prejudice without further notice.

2.  Defendants' Motions to Dismiss (Docs. 6, 8, 9, 11, 15, 17, 19, 32 and 44) are **DENIED without prejudice**.

3.  Plaintiffs' Motion to Strike (Doc. 22) is **DENIED as moot**.

4.  Defendants' Motions to Strike (Docs. 31, 48, 54 and 55) are **GRANTED**. Plaintiffs' Counter-Motions For Summary Judgment (Docs. 13 and 21) are **STRICKEN**.

5.  Plaintiffs' Motions Requesting Leave to File Excess Pages (Docs. 12, 33, 35, 42 and 46) are **DENIED**.

6.  Plaintiffs' Motions Requesting the Court to Take Judicial Notice (Docs. 24,

25, 27, 28, 30 and 39) are **DENIED**.

7.      Plaintiffs' Motion to Consolidate (Doc. 49) is **DENIED**.

8.      Plaintiffs' Motion For Entry of Order Authorizing Use of CM/ECF and For Other Relief (Doc. 40) is **GRANTED in part and DENIED in part.**

9.      Plaintiffs' Motion for relief in Doc. 41 is **DENIED without prejudice**.


**DONE AND ORDERED** this 13th day of June, 2012.


*s / Gary R. Jones*
GARY R. JONES
United States Magistrate Judge