IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DAVID F. PETRANO, and
MARY KATHERINE DAY-PETRANO,
husband and wife,

    Plaintiffs,

v.                                        Case No. 1:12-cv-86-SPM-GRJ

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY, et al.,

    Defendants.

_____/

## **REPORT AND RECOMMENDATION**

Pending before the Court is Defendant Nationwide Mutual Fire Insurance Company and Carl Schwait's Motion for Rule 11 Sanctions. (Doc. 68.) In response, Plaintiffs filed two motions for sanctions: "Plaintiffs' Motion for Rule 11 Sanctions Against Citizens Property Insurance Corporation, Nationwide Mutual Fire Insurance Corporation, Carl Schwait, Earl Charles Law, CSX Transportation Inc., and All These Defendants' Counsel of Record and Law Firms," Doc. 89; and "Plaintiffs' Motion for Rule 11 Sanctions against Citizens Property Insurance Corporation, Nationwide Mutual Fire Insurance Corporation, Carl Schwait, Earl Charles Law, CSX Transportation, Inc., and All These Defendants' Counsel of Record and Law Firms, and Any Other Defendant and Their Counsel that Join In Defendant Citizens' Motion for Taking Judicial Notice," Doc. 90. Defendants Nationwide, Law, Schwait, CSX Transportation, and Citizens have responded to Plaintiffs' motions for sanctions. (Docs. 94, 95, 99, 100.)

For the reasons that follow, the undersigned recommends that Defendants' motion for sanctions should be granted, and Plaintiffs' motions for sanctions should be denied.

## I. INTRODUCTION

This case began when Plaintiffs filed a complaint in Florida state court, asserting seventeen counts against thirteen defendants. (Doc. 1.) The original complaint spanned more than 139 pages, and inappropriately linked together many unrelated claims against unrelated defendants—including *inter alia* claims of discrimination under the Americans with Disabilities Act, Plaintiffs' dispute with an insurer over an automobile accident, and a land dispute related to an easement. The case was removed to federal court by Defendant Old Republic National Title Insurance Company on May 1, 2012. (Doc. 1.) The Court described the complaint as "a classic example of a shotgun pleading," and directed Plaintiffs "to file an amended complaint in compliance with Rule 8 of the Federal Rules of Civil Procedure and limited to one – and only one –occurrence, which raises a federal claim." (Doc. 74, at 10, 11.) The Court went on to detail numerous problems with the complaint that required dismissal, but provided Plaintiffs with an opportunity to correct these deficiencies in an amended filing. Meanwhile, Defendants Nationwide and Schwait had filed a motion for sanctions under Rule 11, on the grounds that the original complaint was "rambling, irrelevant, and sensational," and "so completely lacking in factual and legal foundation that sanctions are warranted." (Doc. 68, at 4.) Plaintiffs responded to the motion for sanctions with two motions for sanctions of their own, apparently arguing that the defendants, their lawyers, and the associated law firms were engaged in "autism bullying." (Docs. 89, 90.)

Plaintiffs filed an amended complaint on August 13, 2012. (Doc. 113.) The new complaint spanned 226 pages, and listed at least 17 claims against no fewer than 57 named defendants and 100 John Doe defendants. These claims appeared to arise from decades of unrelated incidents of perceived discrimination, and ranged from Plaintiff Mary Day-Petrano's rejection from the California Bar, to anonymous "Autism bullying" on Plaintiff Mary Day-Petrano's Facebook page, to the apparent foreclosure on Plaintiffs' property. Far from filing a complaint which was "limited to one—and only one—occurrence, which raises a federal claim," as the Court's order directed, Plaintiffs proceeded in the other direction altogether. In response to this filing, the Court recommended that the majority of the defendants be severed and dismissed due to Plaintiffs' violation of Federal Rule of Civil Procedure 20, which governs the joinder of parties. The case went forward against the first named defendants against whom there appeared to be related claims: Nationwide Mutual Fire Insurance Company, Earl Charles Law, and Carl Schwait ("the Nationwide defendants"). Those defendants moved to dismiss the First Amended Complaint for failure to state a claim upon which relief can be granted. (Docs. 154, 156.) On January 24, 2013, the undersigned recommended that the motions to dismiss be granted and that the First Amended Complaint be dismissed for failure to state a claim. (Doc. 179.)

## II. DISCUSSION

Rule 11 of the Federal Rules of Civil Procedure imposes a duty upon attorneys as well as parties proceeding *pro se* to refrain from filing or pursuing frivolous claims. Rule 11 sanctions are warranted (1) when a party files a pleading that has no reasonable factual basis; or (2) when a party files a pleading that is based on a legal

theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.[1]  In this Circuit when considering a motion for sanctions under Rule 11, there are two prongs to the court's inquiry. First, the Court must determine whether the legal claims or factual contentions are objectively frivolous, and if so, whether the person who signed the pleadings should have known they were frivolous.[2]

A legal claim is frivolous if no reasonably competent attorney (or *pro se* party) could conclude that it has any "reasonable chance of success" or is a reasonable argument to change existing law.[3] A factual claim is frivolous if no reasonably competent attorney (or as here *pro se* party) could conclude that it has a reasonable evidentiary basis.[4] As such where a party does not offer any evidence or only "patently frivolous" evidence to support factual contentions, sanctions can be imposed.[5]  In determining whether a claim is frivolous, the Court may consider whether the litigant has a history of bringing unmeritorious litigation.  *Bilal v. Driver*, 251 F.3d 1346, 1350 (11th Cir. 2001), *cert. denied*, 534 U.S. 1044 (2001).

---

[1] Fed. R. Civ. P. 11; *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998.)

[2] *Byrne v. Nezhat*, 261 F.3d 1075, 1105 (11th Cir. 2001); *Worldwide Primates, Inc. V. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

[3] *Worldwide Primates*, 87 F.3d at 1254

[4] *Davis v. Carl*, 906 F.2d 533, 535-37 (11th Cir. 1990)

[5] *Id.* at 536.

Once a court concludes that either factual or legal contentions are frivolous, the court must ask whether the party should have known they were frivolous. In making this determination, the Court asks what was known or reasonably knowable when the paper was presented to the Court. Using an objective standard, if a reasonable investigation would have revealed the error to a reasonably competent attorney, then sanctions can be imposed. The reasonableness of the inquiry turns upon the totality of the circumstances.[6]

Rule 11 sanctions are not measured solely at the time of filing because a party or counsel has a continuing duty to advise the court of any changes regarding the veracity of information before the court.[7] "When it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest."[8] Thus, Rule 11 sanctions are appropriate where an attorney or party continues to pursue an action that is no longer supported in law or fact, regardless of whether it was reasonable to file the claim in the first instance.[9]

***Defendants Nationwide and Schwait's Motion for Sanctions***

Defendants Nationwide and Schwait have requested that the Court sanction Plaintiffs under Federal Rule of Civil Procedure 11, on the grounds that the allegations in Plaintiffs' original complaint are frivolous.  The Court has previously found that the

---

[6] *Worldwide Primates*, 87 F.3d at 1254.

[7] *Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997) (per curiam).

[8] *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991.)

[9] *See Aetna Ins. Co. v. Meeker*, 953 F.2d 1328, 1330 (11th Cir. 1992)(upholding Rule 11 sanctions where attorney continued to pursue an action even after evidence arose showing that the initial filing was part of the client's scheme to defraud.)

original complaint was a shotgun pleading, consisting of "confusing and rambling allegations" and "replete with irrelevant and unsupported factual allegations and legal conclusions, and [] plagued by incomprehensible and truly puzzling statements." (Doc. 74, at 5, 10.) The Court noted, in directing Plaintiffs to amend the complaint in compliance with Federal Rule of Civil Procedure 8 and 20, that "the Court is forced to sift through various irrelevancies and myriad word puzzles to distill what it is exactly that Plaintiffs intend to place before the Court for resolution – an onerous task which the Court is unable and unwilling to perform in this instance or any other instance." *Id.* at 10. In their motion for sanctions, Defendants Nationwide and Schwait have put forth a valiant effort to decipher Plaintiffs' claims in order to assess their legal merit (or lack thereof). The Court will, accordingly, briefly summarize each of the claims against these Defendants.

In Count One, Plaintiffs purport to bring a claim against Defendant Nationwide, its claim handler Earl Charles Law, and its attorney Carl Schwait for "personal injury of Mary Katherine Day-Petrano." (Doc. 1, at 37.) This claim alleges that Nationwide wrongly refused to pay Plaintiff Day-Petrano's uninsured motorist claim. Plaintiffs allege that Plaintiff Day-Petrano was rear-ended, and that Nationwide paid her uninsured motorist claim for that accident, but that Nationwide refused to pay for the alleged "second collision" that occurred when Plaintiff Day-Petrano's body hit the inside of her vehicle. Plaintiffs allege that this refusal to pay constituted retaliation against Plaintiff Day-Petrano for her autism and brain injuries. Plaintiffs go on to claim that Defendant Nationwide stalked her website, "maliciously cyberbullied, threatened, and intimidated her on her Facebook page," and committed vulnerable disabled and elderly

abuse. *Id.* at 41, 42. Plaintiffs claim that Defendant Schwait, Nationwide's attorney, attempted to manipulate the process of nominating judges to the Eighth Judicial Circuit, for the purpose of discriminating against Plaintiff Day-Petrano due to her disabilities and in order to ensure better judicial outcomes for Defendant Nationwide. *Id.* at 45. Plaintiffs also allege that Defendants Nationwide, Law, and Schwait forced her to sign documents in printed formats that she could not understand. Finally, Count One includes a lengthy series of unintelligible allegations that Defendants Nationwide, Law, and Schwait caused Plaintiff Day-Petrano to be denied access to medical treatment for her brain injuries, that these defendants taunted and threatened Plaintiff with ongoing injury, interference with Plaintiff's bar admission, and even death.

      The Court noted, in directing Plaintiffs to amend their Complaint, that "this claim is really a claim for breach of contract, bad faith or declaratory relief, claims that do not involve any federal question. Plaintiffs, however, attempt to include allegations against Nationwide for violation of the ADA, without alleging a factual or legal basis for the ADA claim. The Court is left to guess as to the nature of the claim." (Doc. 74, at 12.) Plaintiffs repeated this claim—including the allegations against these defendants for "cyberbullying" and elderly abuse—in their First Amended Complaint. (Doc. 113.) In recommending dismissal of the claim as it appeared in the First Amended Complaint, the Court observed that Plaintiffs "failed to demonstrate that the court has subject-matter jurisdiction over the state law claims. . . . and have also failed to provide factual support for any insurance claims they may be asserting in this count, including any factual details regarding the insurance policy with Defendant Nationwide." (Doc. 179, at 11.) Combined with the irrelevant and scandalous allegations against Nationwide's claims handler and attorney—against whom Plaintiffs have absolutely no basis to assert

any claim of liability for insurance payments—it is clear that Count One is properly described as frivolous.

Count Two likewise purports to arise from Defendant Nationwide's refusal to pay a claim related to the "second collision." Plaintiffs request that the Court declare that their insurance policy covers this incident, and further request the Court to vacate a settlement agreement between Nationwide and Plaintiff Day-Petrano. This claim was repeated in Plaintiffs' First Amended Complaint. In recommending dismissal of that claim, the Court stated that

> [t]here are no factual details whatsoever regarding the purported settlement agreement to permit the Court to determine what type of claim is being asserted. Furthermore, Plaintiffs have again failed to provide factual support for any insurance claims they wish to assert, including any basic factual information regarding the purported insurance policy and Plaintiffs' claims under the policy. Finally, Plaintiffs have failed to demonstrate that the Court has subject-matter jurisdiction over this state-law claim."

(Doc. 179, at 12.) The same problems are apparent in the original complaint. Further, Defendants properly point out that Plaintiffs attempt to support their legal theory in this Count with case citations that are inaccurate at best, and misleading at worst. Plaintiffs asset that "[a]n auto crash involving first the crash, and second the seat restraint failure, is recognized under Florida law as constituting <u>two collisions</u>." (Doc. 1, at 51, emphasis in original.) In support of this statement, Plaintiffs cite to *Insurance Company of North America v. Paskamis*, 451 So.2d 447 (Fla. 1984), a case that held that where competent evidence existed that failure to wear a seat belt contributed substantially to an individual's injuries in a car accident, an insurer could assert the "seat belt defense." While the Florida Supreme Court mentions in passing that "automobile collisions are foreseeable as are the so-called 'second collisions' with the interior of the automobile,"

*Id.* at 453, nowhere does the Court state or even hint that passengers may recover twice from their insurers based on these "two" collisions. Simply put, there is no law or reasonable legal argument to support this clam and thus the Court has no hesitation in finding that this claim in Count Two is frivolous.

Count Three alleges that Defendants Nationwide, Law, and Schwait violated Florida Statute § 415.1111 by committing vulnerable adult abuse of Plaintiff Day-Petrano. In support of this claim, Plaintiffs "re-allege[] and incorporate[]" all the preceding allegations of the Complaint, but provide no additional factual support. (Doc. 1, at 57.) The Court finds Count Three is also utterly frivolous.

Pursuant to § 415.1111, a "vulnerable adult who has been abused, neglected, or exploited" may bring a cause of action "against any perpetrator." Accordingly, even assuming *arguendo* that Plaintiff Day-Petrano is a "vulnerable adult," Defendants Nationwide, Law, and Schwait would have had to abuse, neglect, or exploit her in order for a cause of action to lie. Florida Statute § 415.102(1) defines "abuse" as "any willful act or threatened act by a relative, caregiver, or household member which causes or is likely to cause significant impairment to a vulnerable adult's physical, mental, or emotional health." It is obvious that none of these defendants is a relative, caregiver, or household member of Plaintiff Day-Petrano.

Further, Florida Statute § 415.102(16) defines neglect as "the failure or mission on the part of the caregiver or vulnerable adult to provide the care, supervision, and services necessary to maintain the physical and mental health of the vulnerable adult." Again, it is abundantly evident that none of these defendants are caregivers for Plaintiff Day-Petrano.

Finally, Florida Statute § 415.102(8)(a) defines "exploitation" as "a person who stands in a position of trust and confidence with a vulnerable adult and knowingly, by deception or intimidation, obtains or uses. . . a vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive a vulnerable adult" of the use of that property, *or*, a person who attempts to obtain or use "the vulnerable adult's funds, assets, or property" while that person "knows or should know that the vulnerable adult lacks the capacity to consent."  Plaintiffs have provided no factual support whatsoever for the allegation that these defendants held a position of trust and knowingly deceived them in order to obtain their funds or property. Plaintiffs have also failed to support the assertion that these defendants knew that Plaintiffs lacked the capacity to consent, and used that knowledge to obtain Plaintiffs' funds or property.  To the contrary, Plaintiffs repeatedly have pointed out in their voluminous filings before this Court that Plaintiff David Petrano is a licensed Florida attorney and Plaintiff Mary Katherine Day-Petrano is a law school graduate who has successfully passed the California bar examination.  In view of the total lack of support for these scandalous allegations, the Court concludes that Count Three is properly characterized as frivolous.

Count Four of the Complaint purports to request "damages for *per se* negligence," based on Defendants Nationwide, Schwait, and Law's alleged violations of the Americans with Disabilities Act.  (Doc. 1, at 59.)  Again, this claim arises from Nationwide's denial of Plaintiff Day-Petrano's uninsured motorist claim.  In support of this claim, Plaintiffs simply incorporate by reference the fifty-plus preceding pages of the Complaint, and offer no specific supporting facts whatsoever.  This claim – like the others –  is frivolous.  As discussed extensively in the Report and Recommendation

recommending dismissal of the First Amended Complaint, Defendants Schwait and Law cannot be considered "public accommodations" under the ADA. (Doc. 179, at 14.) With regard to Defendant Nationwide Plaintiffs have made no allegations that they are unable to access the physical structure of Nationwide's offices. Thus, Count Four is another example of Plaintiffs attempting to link of state law claims to the ADA through the mere recitation of conclusory allegations, with little or no supporting facts.

Finally, in Count Five, titled "Declaratory and Injunctive Relief against Defendant Nationwide Mutual Fire Insurance Company," Plaintiffs apparently wish to bring a bad-faith claim against Defendant Nationwide simultaneously with their other claims. It is well-established in Florida that "[w]here causes of action for both the underlying damages and bad faith are brought in the same action, the appropriate step is to abate the bad faith action until coverage and damages have been determined." *State Farm Mut. Auto. Ins. Co. V. Tranchese*, 49 So.3d 809, 810 (Fla. 4th DCA 2010 (citing *Allstate Indem. Co. v. Ruiz,* 899 So.2d 1121 (Fla. 2005).

Plaintiffs assert that this policy discriminates against persons such as Plaintiff Day-Petrano, who have "underlying aggravated brain conditions and/or traumatic brain injuries disabilities," in violation of the ADA. (Doc. 1, at 62.) Again, Plaintiffs provide no support for the conclusory allegation that they are injured by the inability to bring a bad-faith claim before questions of liability are decided nor have Plaintiffs pointed to any law to support their strained legal reasoning. The Court, therefore, concludes that this claim is frivolous, because no reasonable attorney could find that Plaintiffs have made a reasonable argument to change existing law. *See Worldwide Primates*, 87 F.3d at 1254.

For all of these reasons, the undersigned has no problem concluding that the allegations against Defendants Nationwide and Schwait are frivolous and without any factual or legal support.

The next step of the analysis is to determine whether Plaintiffs should have known that their claims were without merit. The undersigned concludes that Plaintiffs should have known that the claims in the original Complaint—many of which were repeated almost verbatim in the First Amended Complaint—were frivolous. As other courts have observed, Plaintiff David Petrano is a licensed attorney in the State of Florida, and Plaintiff Mary Katherine Day-Petrano is a law school graduate. Judge Whittemore, describing Plaintiffs' "frivolous and borderline sanctionable" claims in a prior case, that also included "baseless allegation[s] of discrimination," noted:

> By virtue of their law degrees, and in the case of David Frank Petrano, his license to practice law, they know better than to include accusations and remarks such as these in their pleadings. . . . Their legal education should enable them to correctly evaluate the merits of any perceived mistreatment by others and to determine whether a viable cause of action can be asserted. . . . They do not have a right to pursue frivolous claims, engage in baseless and defamatory argument and unnecessarily burden the court and opposing parties.

*Petrano v. Hutto*, No. 8:05-CV-1182-T-27EAJ, 2006 WL 4701845, at *1 (M.D. Fla. Apr. 21, 2006). In a separate case, Judge Whittemore stated that Plaintiff Day-Petrano "has a law degree and has demonstrated in other litigation before this Court that she has a fundamental understanding of the substantive and procedural requirements for litigating in federal court commensurate with her legal education." *Day-Petrano v. Levine*, No. 8:06-CV-1647-T-27TBM, 2006 WL 3841789, at *1 (M.D. Fla. Dec. 14, 2006). The court determined in that case that in light of Plaintiff Day-Petrano's extensive litigation experience and legal education, she was "not entitled to the usual liberal construction of

pleadings afforded *pro se* litigants." *Id.* The court further noted that Plaintiff Day-Petrano had a history of abusive litigation tactics, and had "been the subject of repeated admonishments and a judicial sanction prohibiting her from representing herself in that action." *Id.* at *1, n. 1 (citing *Petrano v. The Vessel Mistress*, 8:04-CV-2534-T-27EAJ).

Plaintiffs' history of frivolous and abusive litigation in the state of Florida is long indeed, and both plaintiffs have received repeated warnings for their behavior. *See Petrano v. The Vessel Mistress*, No. 8:04-CV-2534-T-27EAJ, 2007 WL 294234, at *2 (M.D. Fla. Jan. 29, 2007) (dismissing Plaintiffs' complaint as frivolous and nothing that the "court has previously warned Plaintiffs that continuing to file unnecessary or irrelevant pleadings and documents containing redundant, immaterial, scandalous, or impertinent material may subject them to sanctions," and finding that "Plaintiffs' arguments are clearly a repeat of arguments that have previously been deemed frivolous and have no arguable basis in law or fact"); *Day-Petrano*, 2006 WL 3841789; *Petrano*, 2006 WL 4701845; *Day-Petrano v. Altenbernd*, No. 8:05-CV-01183-SCB-TBM (M.D. Fla. June 23, 2005); *Petrano v. May*, No. 8:04-CV-02478-SDM-MAP (M.D. Fla. Dec. 20, 2004); *Petrano v. State of Florida*, No. 8:03-CV-1746-T-24-MSS (M.D. Fla. Apr. 15, 2004). In light of Plaintiffs' legal education and extensive history of filing frivolous and abusive litigation, the Court finds that Plaintiffs should have known that the instant Complaint was more of the same and worse. Plaintiffs have been threatened with sanctions time and time again, apparently to no avail. The Court therefore concludes that in this case, Rule 11 sanctions appropriately are warranted.

In considering the nature of the sanctions to be imposed, Rule 11(c)(4), provides that the sanction must be limited to what "suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and if warranted, may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly related to the violation."

In this case, because the defendants have been forced to defend against Plaintiffs' patently frivolous claims, both in the original Complaint and through the rash of meritless motions that Plaintiffs filed after the case was removed to federal court, the undersigned finds that a monetary penalty in the form of reasonable attorney's fees and expenses is the minimum necessary to deter repetition of the conduct.

Accordingly, Defendants Nationwide and Schwait are entitled to recover their reasonable attorney's fees and other expenses incurred from the date the case was removed to federal court, including the reasonable expenses incurred in bringing the instant motion for sanctions.[10]

*Plaintiffs' Motions for Sanctions*

Plaintiffs responded to Defendants Nationwide and Schwait's motion for sanctions by filing two motions for sanctions of their own. These motions are as rambling, confusing, and as filled with irrelevant and scandalous allegations as the

---

[10] Rule 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for this motion.") Prior to the 1993 Amendment to the Federal Rules of Civil Procedure which added this provision, the Eleventh Circuit had held that a party can collect the expense of pursuing the Rule 11 motion. *Mike Ousley Productions, Inc. v. WJBF-TV*, 952 F.2d 380, 383-84 (11th Cir. 1992.)

original Complaint and First Amended Complaint.  Accordingly, the undersigned respectfully recommends that both motions should be denied.

Plaintiffs' first motion for sanctions is brought against "Citizens Property Insurance Corporation, Nationwide Mutual Fire Insurance Corporation, Carl Schwait, Earl Charles Law, CSX Transportation, Inc., and All These Defendants' Counsel of Record and Law Firms."  (Doc. 89.)  Plaintiffs allege that the named defendants and their counsel "all came forth in a 'Wolf pack' social cuing social cooperation calling" to file meritless motions in opposition to the complaint.  *Id.* at 2.  Plaintiffs assert that the named defendants are bullying them, apparently by virtue of the defendants having filed motions to dismiss the complaint and the previously discussed motion for sanctions.  Plaintiffs go on to describe a litany of past incidents, completely unrelated to the instant litigation, including—for example—alleged bullying by the United States Attorney in San Francisco in 1986 and disability accommodations, or lack thereof, by the dozens of other courts in which Plaintiffs have filed suit.  Plaintiffs conclude their motion by requesting that the Court award them $1,000,000 in damages, "except as to Defendant Citizens and their counsel of record in the amount of $35 million for Autism bullying."  *Id.* at 11.

Plaintiffs' second motion for sanctions is brought against Defendants Citizens, Nationwide, Schwait, Law, CSX Transportation, and "All These Defendants' Counsel of Record and Law Firms, and Any Other Defendant and Their Counsel That Join In Defendant Citizens' Motion for Taking Judicial Notice."  (Doc. 90.)  Plaintiffs take issue with Defendant Citizens' Request for Judicial Notice, Doc. 59, in which the defendant requested that the Court take notice of multiple other frivolous and meritless lawsuits

filed by Plaintiffs against the State of Florida, numerous state and federal judges, the Florida Board of Bar Examiners, and the U.S. Department of Education, to name but a few. Plaintiffs object, not to Defendant Citizens' request for judicial notice, but to the following two sentences in that motion:

(1) "Mary Day-Petrano filed lawsuits alleging, for example . . . the Florida Bar and Florida Board of Bar Examiners discriminated against her through their fee, testing and admission processes, presumably denying her admission to the Florida Bar." *Id.* at 4.

(2) "Plaintiff Day-Petrano purports to be a law school graduate." *Id.* at 4, n. 1. Plaintiffs allege that these two statements cast doubt upon Plaintiff Day-Petrano's graduation from law school, and imply that she was denied admission to the Florida Bar (as opposed to being denied disability access to the exam, as she claims). Plaintiffs allege that this constitutes "Autism bullying." Plaintiffs bring the motion for sanctions against a multitude of defendants, their counsel, and their counsel's law firms despite the fact that only Citizens' counsel was signatory to the motion.

Plaintiffs' motions for sanctions, like the allegations in their Complaint, are devoid of merit and are frivolous. In the first motion, Plaintiffs appear to argue that any opposition to their Complaint constitutes "Autism bullying" and is sanctionable. This assertion make no sense. Plaintiffs' original Complaint—and First Amended Complaint, which repeated many of the same claims as the original Complaint—was frivolous and a paradigmatic example of a shotgun pleading, and thus defendants were not only entitled to file motions to dismiss the Complaint but also a motion for sanctions. In the second motion, Plaintiffs' allegation that Defendant Citizens "ma[de] knowingly and materially false defamatory damaging representations about Plaintiff Day-Petrano's

Florida bar admission and law school graduation to inflict injury-in-fact on her reputation and profession" is frivolous. Defendant Citizens' statements in its request for judicial notice were accurate and factual, and provide no basis for sanctions. In contrast, Plaintiffs' motions for sanctions appear to be retaliatory, and sufficient to constitute vexatious proliferation of the litigation. *See Inst. For Motivational Living, Inc. V. Doulos Inst. For Strategic Consulting, Inc.*, 110 F. App'x 283, 286-87 (3d Cir. 2004) (noting that while the circuits are split on whether a court may sanction a *pro se* party under 28 U.S.C. § 1927, the "vexatious litigation" statute, the court may award identical sanctions under its inherent authority).

Accordingly, because Plaintiff's motions have no legal or factual support, and are based upon unsupported and delusional allegations, the undersigned concludes that both of Plaintiffs' motions for sanctions should be denied.

### III.  RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that:

1. Defendant Nationwide Mutual Fire Insurance Company and Carl Schwait's Motion for Rule 11 Sanctions (Doc. 68) should be **GRANTED**.

2. Within ten (10) days Defendants Nationwide and Schwait should submit affidavits and documents establishing the amount and reasonableness of the attorney's fees and expenses incurred since the date the original complaint was filed. The Court will then determine the appropriate amount of attorney's fees and expenses to be awarded and will issue a further report and recommendation as to the appropriate amount to be awarded.

3. Plaintiffs' "Motion for Rule 11 Sanctions Against Citizens Property Insurance Corporation, Nationwide Mutual Fire Insurance Corporation, Carl Schwait, Earl Charles Law, CSX Transportation Inc., and All These Defendants' Counsel of Record and Law Firms" (Doc. 89); and Plaintiffs' "Motion for Rule 11 Sanctions against Citizens Property Insurance Corporation, Nationwide Mutual Fire Insurance Corporation, Carl Schwait, Earl Charles Law, CSX Transportation, Inc., and All These Defendants' Counsel of Record and Law Firms, and Any Other Defendant and Their Counsel that Join In Defendant Citizens' Motion for Taking Judicial Notice" (Doc. 90) should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida this 4th day of February 2013.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

**NOTICE TO THE PARTIES**

Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.